**O**

# United States District Court
# Central District of California

| | |
|---|---|
| VERONICA J. ROWE,<br><br>            Plaintiff,<br><br>     v.<br><br>RANDALL D. NAIMAN ESQ – STATE BAR NO. 81048; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. 2:14-cv-02498-ODW(SHx)<br><br>**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

## I.   INTRODUCTION

In June 2012, non-party Homesales, Inc. purchased Plaintiff Veronica J. Rowe's residence at a trustee's sale. On April 25, 2014, she filed this action against Defendant Randall D. Naiman, who she alleges used forged and fraudulent documents to foreclose her mortgage note. Rowe also brought this temporary-restraining-order application, ostensibly requesting that the Court enjoin Naiman's eviction-related actions against her. But after reviewing Rowe's Complaint, the Court finds that she has failed to demonstrate that she will suffer irreparable harm without an emergency injunction. The Court therefore **DENIES** her Application.

/ / /

/ / /

## II.    FACTUAL BACKGROUND

On April 21, 2006, Rowe executed a promissory note and deed of trust in the name of non-defendant Encore Credit Corporation for the purchase of the property located at 19350 Sherman Way, Unit 216, Reseda, California 91335 ("the property"). (Compl. ¶¶ 5, 26.)   Encore then sold Rowe's loan to non-defendant Washington Mutual Bank ("WaMu").   (*Id.* ¶ 26.)   Rowe alleges that WaMu subsequently transferred the note into a mortgage-backed security, which was then sold off to investors around the world.  (*Id.*)

After WaMu failed, the Federal Deposit Insurance Company sold WaMu's assets to JPMorgan Chase Bank, NA ("JPM").  (*Id.* ¶ 15.)   But Rowe alleges that under the plain terms of that agreement, JPM did not become WaMu's successor in interest. (*Id.* ¶ 15)  Rather, Rowe asserts, since WaMu's closure, the FDIC as receiver has controlled WaMu.  (*Id.*)  Accordingly, Rowe asserts JPM did not acquire WaMu's mortgage-backed securities.  (*Id.*)

Rowe argues that despite the fact that her loan was transferred to the FDIC incident to the WaMu Receivership—and not in fact sold to JPM—Naiman instituted eviction proceedings on behalf of JPM.  (*Id.* ¶ 16–17.)  She asserts that JPM was able to obtain illegal title to the property by way of Naiman's fraudulent sworn eviction complaints and representations that the foreclosure proceedings were in compliance with California Code of Civil Procedure section 2924.  (*Id.* ¶ 27.)

On March 25, 2009, California Reconveyance Company, acting as trustee, recorded a Notice of Default on the property and substituted JPM Specialty Mortgage, LLC as Trustee.  (*Id.* ¶ 26.)  On June 4, 2012, JPM Specialty Mortgage, as substituted trustee, sold the property to Homesales—a JPM company—for $130,785.00.  (*Id.* ¶ 29–31.)

On April 52, 2014, Rowe filed this action against Naiman, alleging claims for common-law fraud; conspiracy to defraud; mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; racketeering, 18 U.S.C. § 1952; interstate transportation of stolen

1  property 18 U.S.C. § 2314; unjust enrichment; civil conspiracy; and civil violation of

2  the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

3  (ECF No. 3.)

4       Rowe also included an application for a temporary restraining order in her

5  Complaint.  She requests that the Court immediately enjoin "all eviction activity"

6  engaged in by Naiman during the pendency of this litigation.

7                    **III.    LEGAL STANDARD**

8       A court may issue a temporary restraining order upon a showing "that

9  immediate and irreparable injury, loss, or damage will result to the movant before the

10  adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The purpose

11  of such an order is solely to preserve the status quo and to prevent irreparable harm

12  "just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods,*

13  *Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974).

14       "The standard for issuing a temporary restraining order is identical to the

15  standard for issuing a preliminary injunction."  *Lockheed Missile & Space Co., Inc. v.*

16  *Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see also Stuhlbarg*

17  *Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th

18  Cir.2001).  A plaintiff seeking a preliminary injunction must establish (1) a likelihood

19  of success on the merits; (2) a likelihood that plaintiff will suffer irreparable harm in

20  the absence of preliminary relief; (3) that the balance of equities tips in his favor; and

21  (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council*,

22  555 U.S. 7, 20 (2008).

23       The Ninth Circuit employs a "sliding scale" approach to *Winter*'s four-element

24  test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

25  Under this approach, a preliminary injunction may issue if the plaintiff raises "serious

26  questions going to the merits" and demonstrates that "the balance of hardship tips

27  sharply towards the plaintiff's favor," but only so long as the plaintiff also

28

1  demonstrates that irreparable harm is likely—not just possible—and that the

2  injunction is in the public interest.  *Id.* (internal quotation marks omitted).

3        Finally, "a preliminary injunction is an extraordinary remedy never awarded as

4  of right."  *Winter*, 555 U.S. at 24.  Thus, a district court should enter preliminary

5  injunctive relief only "upon a clear showing that the plaintiff is entitled to such relief."

6  *Id.* at 22.

## IV.   DISCUSSION

8        Rowe has not sufficiently established a likelihood of suffering irreparable harm

9  for the Court to issue a temporary restraining order.  "Speculative injury does not

10  constitute irreparable injury sufficient to warrant granting a preliminary injunction."

11  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  Thus, to

12  secure a temporary restraining order, Rowe "must do more than merely allege

13  imminent harm sufficient to establish standing; [she] must *demonstrate* immediate

14  threatened injury as a prerequisite to preliminary injunctive relief."  *Id.*

15        As evidence of irreparable injury, Rowe calls the Court's attention to the June

16  4, 2012 foreclosure sale.  Rowe takes the position that she will suffer irreparable harm

17  without a court order enjoining Naiman's "eviction activity."  (Compl. ¶ 124.)  But

18  Rowe alleges that the property was sold at a trustee's sale back in June 2012—nearly

19  two years ago—after Naiman obtained a Writ of Execution.  (*Id.* ¶ 16.)  She also

20  indicates that JPM has already paid for the property.  (*Id.* ¶ 30.)  Thus, it appears that

21  all foreclosure-related activity has already occurred.

22        There is therefore no immediacy to Rowe's request.  With no pending

23  foreclosure, there is no sale to restrain or enjoin.  Rowe cannot obtain a temporary

24  restraining order simply to have the Court adjudicate her claims at break-neck speed.

25  She must instead allow Naiman to be served, answer, and defend against her claims.

26  Due process demands that much.  The Court thus finds that Rowe has not established

27  a likelihood of suffering irreparable harm.  Since the Court has found that Rowe has

28  / / /

1  not established an element necessary for issuing a temporary restraining order, the

2  Court need not opine on the remaining factors.

3  **V.   CONCLUSION**

4  For the reasons discussed above, the Court **DENIES** Roe's Application for a

5  Temporary Restraining Order.

6  **IT IS SO ORDERED.**

7

8  April 29, 2014

9

10  _____

11  **OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28